Case number 13-2456 Dow Corning Corporation vs. Claimant's Advisory Committee, argument not to exceed 15 minutes per side. Mr. Smith, you may proceed for the appellant whenever you're ready. Good morning, Your Honors. May it please the Court, my name is Doug Smith. I'm here with my colleague, Anya Esker-Brock, on behalf of Appellant Dow Corning. This case is back from remand to the District Court, where this Court had instructed the District Court to do one simple thing, examine the extrinsic evidence about whether a medical device called a tissue expander is a breast implant. The District Court failed to do so. Instead, the Court based its ruling on two erroneous contract interpretations. First, the District Court looked at the extrinsic evidence. Did she do that? No. On page 4 of the opinion, she says, The evidence submitted by Dow Corning is not relevant to the Court's determination of whether the party's intended tissue expander claimants be given benefits under the breast implant provision. In that one sweeping sentence, she blew off all the evidence that Dow Corning had submitted to the District Court. Your Honor is correct that she does address two pieces of evidence in her opinion that we had submitted. One was the Jakubczak affidavit, and the other was the Dunbar report, but she only addresses them to say that she's not going to consider them, because, and you have to read through the tea leaves, it's hard to figure out what she was doing, but she seems to draw a line between the objective evidence of intent, which she held was irrelevant, and the subjective intent of the parties. And she said, Dow Corning, you submitted a lot of evidence about what the medical community, others understood was the meaning of this, but that's not relevant to the question. There are two problems with that. One, the District Court misinterpreted the law because it's the objective evidence that you have to consider. You can't just say it's irrelevant. And two, because those materials, like the Jakubczak affidavit and the Dunbar report, they address not only objective evidence of intent, but subjective evidence. Jakubczak was specifically a person involved on behalf of Dow Corning in drafting the plan and submitting the list of products that would be incorporated, and he said we didn't include tissue expanders, and nobody was asking us to include tissue expanders. Dunbar was the expert. No, they were. Well, they were listed in the Dunbar report when we were going through the other products. That was the second piece of evidence that she did address. The Dunbar report was the report that filled out what is in that other product category and estimated those claims, and tissue expanders are expressly listed in the other product category. That was jointly submitted by the parties. I don't know what else you could look to for subjective intent. The joint written submission of the parties during the confirmation proceeding, there was no objection to it on behalf of both parties. That was what they said the plan was going to do. And just to get what she did instead of looking at that extrinsic evidence, which she essentially ruled irrelevant, she looked again back to the language of the plan that this court said was ambiguous. She looked at SFA Annex A, Section 4.03, and she said that's directing me to look to a different settlement agreement in a different proceeding to which Dow Corning was not even a party. That was the RSP, the revised settlement program that was presided over by the Northern District of Alabama. She didn't cite any extrinsic evidence about that. She just cited, again, the plan document language, saying I know that it says it only governs procedures and protocols, but I'm going to interpret that as saying that it governs substantive determinations about which products get compensation or not, even though that is addressed in completely different provisions of the plan. Then she went on to a second erroneous contract interpretation. She then proceeded to interpret the RSP, and she said, you know what, I know that it says that Dow Corning tissue expanders aren't breast implants, they're not treated like that, but I'm going to interpret it as if it covers, it says that breast implants and tissue expanders are equivalent. I was just going to ask you, did she do anything right? I mean, she spelled out everything. It just sounds like she didn't do anything right. You're losing a little credibility here. Well, I think she laid out at the beginning, here's what she did right. At the beginning of her decision, she said that my charge is to consider the extrinsic evidence. That was her charge from the district court. Then she went on to say that New York law governs this question, and she laid out the legal principles. But then in applying those principles to this case, she did err. I mean, the things that we agree with her on are the findings she made that she refused to consider. We agree with her that tissue expander and breast implant mean different things. That factual finding we agree with. But first of all, we have Jeff Sackler, who wrote the additional opinion. So we start with the idea that there's an additional opinion. There's an additional opinion. You've joined this case. We started with the idea that there's an interviewer. And then as she lays out, you mentioned Dr. Dunbar. And his report does have a flaw. You've got a tissue expander. It's not going to stay under breast implants. But then they would, by definition, then be listed under other products. They weren't listed there either. Yes, they were. Well, they were listed in his report under other products. I guess all I can do is point you to, I believe it's page ID 176. There's two chips. No, there's nothing. You can make sure you're answering my question. But she says the point is that these are listed tissue expanders under other products. That was in the plan document. That's in the plan. She's right about that. There was an express listing for tissue expanders. But that only proves our point. Because even if you're going to say that the RSP governs, and you're going to go off on this tangent, the rule under the RSP was the products that get settlement compensation are the ones that are expressly listed. There was an exhibit G to the RSP that lists out a bunch of products. And they listed some tissue expander products there. Steve, isn't this the idea? What you have here is a definition of breast implant that you say is brought in from the department's intended. But then, literally, it wouldn't pick up the exact devices we're talking about. Now, there may be a reason that she could have found that they didn't. But I categorized this in the first category as a mess. And she's cleaning up. Well, I mean, the court in the prior decision, we maintained that the language was unambiguous and that breast implant is not a tissue expander. The court held that it was ambiguous, right, and directed the court then to go to the extrinsic evidence. She looked at the extrinsic evidence but then refused to consider it on the ground if it's irrelevant. But let's look at what her findings were about that extrinsic evidence. She acknowledged tissue expander and breast implant mean different things. The medical doctors advising claimants understand a tissue expander is not a breast implant. FDA classifies them differently. Does that mean two things mean different things? Does it mean thing two can't fall within thing one? Right? And that happens all the time. Yeah. I mean, yes, they're two different things. I get it. But that's not the whole question in this case is whether the broader category can pick up this other definition. Then she also acknowledged that when the parties addressed that issue and submitted the estimation that they counted tissue expanders outside of that definition of breast implant. They put them in the other product category that was not eligible for settlement compensation. And Dr. Dunbar's report was quite clear. He had a listing, product by product by product. Here's all the products that are entitled to settlement compensation that covered other products, and here's the products that are not. And tissue expanders, all 1,041 of those claims, were listed in the category that was not entitled to settlement compensation. So the extrinsic evidence, I believe, based on her findings, she found that the extrinsic evidence was in our favor. She just decided that it was not relevant, and instead she would govern her decision by the language in the plan, section 4.03, that directed her to the RSP, which she then misinterpreted in a manner not only that's inconsistent with the RSP, which the rule under the RSP was, number one, dopamine tissue expanders were not breast implants, and number two, if you got settlement compensation, you had to be on the list. And here there was a list of products, covered other products in the Dow Corning plan, and tissue expanders weren't on it. So the lack of an express designation of tissue expanders means they don't get settlement compensation. That was the rule under the Dow Corning plan. It's the rule under the RSP. Well, here's the problem, and just a step back. I know that the court has found it to be unambiguous, but you have to step back and look at this. Ambiguous. You have to step back and understand the context of this. When the plan was drafted, the issue was these breast implant claims, right? The company faced thousands and thousands of breast implant claims. As time went on, the courts have said that's based on junk science, and there have been all kinds of federal court decisions saying that the scientific evidence is unreliable. Those decisions were only coming in as the plan was being drafted. But these tissue expander claims, those were nothing claims. Those were like catheter claims that were mentioned here in the other product category. They're nothing that ever had any significant litigation history, and that's why there wasn't something express or more fulsome in the plan about them. They just weren't a significant category of claims under the plan. But what you just said, it does suggest that the drafting and negotiating parties weren't thinking about them. Well, they did think about them when they went to the confirmation hearing and told the judge what is covered and what's not covered. And there, they did... Dr. Dunbar had an extensive report where he went through all the claims, even the 11 catheter claims, right? He categorized even the most insignificant claims down to, you know, each individual claim, and he put tissue expanders in the class... Well, it was submitted in the confirmation hearing. Everybody was there. The court, that's what the court approved. That's the plan that was approved, and everybody that was there knew that they were in this category that was the non-cover category, and there was no objection. And in fact, not only was there no objection, but Dr. Dunbar was jointly sponsored by the claimants and by that court. But if you look at, you know, the overall structure of the two plans also, it shows that the claimant's interpretation is incorrect. Number one, the claims that were to receive settlement compensation under the plan were the long-term implanted products. I mean, the theory was women had got these products, and over years, they developed conditions like rheumatoid arthritis from, you know, changes in their immune system. And so if you look at it, there's an explantation benefit for breast implants. They pay extra money to remove the product, but that makes no sense for a tissue expander, which is only there to stretch the skin. It's going to be removed. The whole purpose of it is to be removed. That makes no sense. They admit that their interpretation leads to windfall results. If you have a Dow Corning tissue expander and some other manufacturer's breast implant, because tissue expanders by Dow Corning were not breast implants under the RSP, there's no reduction for multiple products under the RSP, so you get 100% recovery. You go over to the Dow Corning plan, you're going to get an additional 50%, 150% recovery, plus a woman who had two different breast implants, a Dow Corning one and another manufacturer, would get a reduction in the RSP because there would be two breast implants. So that woman would get less money than the woman that just had a tissue expander and a breast implant. And the final thing, if I may just mention... It's your rebuttal time. The final thing I would mention, Your Honors, is there are 247 tissue expander products they concede are not covered. Why on earth would anybody agree to pay those claimants zero money and the claimants that have the three kind of models that happen to be in the breast rather than someplace else in the body these windfall recoveries under the plan? And it makes no sense that there's nothing in the plan indicating that that's the parties' intent. Thank you. Thank you. Good morning. May it please the Court, Jeffrey Trackman for the Claimants Advisory Committee. I'm getting over my disappointment that the big crowd wasn't here for tissue expanders, but I'm going to go forward. These claims are caused by several... I'm sorry? These claims are caused by several... These claims are caused by several... Is that a serious question or a facetious question? It's a serious question lurking in the facetious question. I'm sorry. What I want us to do first is focus on three points that I think narrow and focus the Court's inquiry on. I can come back and do them in more detail if it's useful. But first of all, this Court has already established a very high level of deference on this remand and essentially said if the Court weighs the evidence, that's it, you're going to defer. Second, this Court rejected as a matter of law on the last go-around Dow Corning's principle as a matter of law argument about the language, that the technical medical definition must control as a matter of law. They're basically rehashing that and trying to frame it as a legal error, but it's an issue that was... Those are great points. We get those two points. How do you respond to his allegations of error? Well, his first allegation of error is that... Well, my third point, which I think answers that, is the District Court did exactly what you told the District Court to do. All the evidence that people wanted to submit was submitted. The Court considered it. The Court did what a trial court is supposed to do, decide which evidence is more or less relevant, and focus on the question, which is the expression... I don't understand subjective versus subjective evidence. My understanding is that based on what was expressed and known, it can be subjective, it just can't be secret. It has to be evidence that both parties knew that would inform what the meaning of the minds was. And so she hierarchically focused on what do the parties know? What they knew was the RSP had paid tissue-expander implant claims along with the regular breast implants. They knew that the Dow Corning settlement was expressly structured to be based on the RSP. I'm amazed that they're saying it's only the procedures. It's all through the document. It was communicated to the claimants. It was necessary for the approval of the plan because Dunbar had to project that we had enough money for the opt-outs and the litigation fund. He did so by saying the RSP establishes the market for breast implant claims, and we're going to have improvements on the RSP and pay premiums after a few years, and we're going to get fewer women to opt out, and so I can predict there's enough money. And when they say, oh, it's the protocols, the protocols are important. The protocols and procedures that were developed within the settlement facility are sometimes quite substantive, and my understanding here is that the specific models of Baxter, Bristol, and 3M tissue expanders are not listed on a public list, but they were part of the protocols that were developed, and that's why you have in the record e-mails from the claims administrator and from the claims coordinating officer to our facility saying flatly, we paid, we admitted tissue expander claims as breast implant claims. So what the judge had to... And that was never a challenge. The judge made a finding that Dow Corning didn't put any evidence that that wasn't true. She even stated that the parties agreed. So that's what the parties understood. So the question the judge had to answer is, is it more likely that the parties just let the... intended to let the very small number of tissue expander models that relate to being implanted in the breast come in as they had as breast implants in the RSP, or did they... In response to Dow Corning's argument that if you accept your definition or interpretation in the district courts, it leads to some oddities in implementation in terms of when you have reduction in benefits and when you don't. In terms of the windfall and the... There are some anomalies that arise. The exact same anomaly already is in reverse. If you have a Dow Corning breast implant and a Bristol-Baxter 3M tissue expander, you got paid half in the RSP because you got a reduction for the Dow Corning breast implant. But you come into our facility, the tissue expander does not reduce your claim. Because we bargained, not just tissue expander. We bargained for no saline implants triggering... Are you saying there's no way around...? I'm saying, in some of the most complicated of the anomalies, it's a very rare fact pattern, but it already exists in a structure that they admit exists. Because we bargained for no saline implants triggering the MMR, multiple manufacturer reduction. So a Dow Corning breast implant, Baxter-Bristol 3M tissue expander, theoretically someone could get 150%. I've never heard of an actual case of this happening, but it's possible. It's a complicated settlement. We worked hard to try to get the details right.  But the point is, it was much more likely that the parties simply wanted the same provisions to apply, the same provisions that were in the protocols being handed over to our facility. The judge decided reasonably that it was much less likely that the parties intended to take these products that had been paid, carve them out, not just put them in other products, but dump them in uncovered, non-covered other products, along with things like silicone fluid injections, and pay them nothing. And with her knowledge of 15 years of this case, the judge decided which of those two scenarios, or should be only two scenarios, was more likely. And it's exactly the kind of in-the-weeds, detailed issue that this court already decided was better decided by the judge who's been living with the case for 15 years. The issue of whether the judge actually considered the evidence, I think I already have made the point that these are the kind of decisions judges make all the time. The Granholm case that they rely on primarily makes a very clear distinction between the legal error of excluding evidence from the record and the basic judging function of deciding, once you've admitted evidence, what way to assign it. And that's what she did. They say she said some stuff that's just entirely irrelevant. Well, she said it's not relevant to the question I need to answer, but that's a judgment about what the question is. The question is, what was expressed among the parties? And what Granholm says is, if there's a term of art, you want to look at it, but only if the parties bargained with reference to it. And there's no evidence that the parties bargained here with reference to what doctors or other professionals think is a breast implant. And this court has already said that the lower-case breast implant can be read more broadly, reasonably. So the question is, what do the parties know about how the settlement had pan-operated? I feel like by talking so fast, I've covered a lot of my points. You don't have any other questions? Let me just make sure there's nothing important to respond to, but just give me a second here. Well, I mean, obviously it's not like a catheter, because catheters weren't paid as breast implant claims in the RSP. And this long-term versus short-term point, I think it's important to know, this was a broad settlement. You had disease benefits being paid to silicone gel breast implants. You had disease payments being paid to saline-filled breast implants. You had a much lower risk of disease. You had implants that were in for ten years, and implants that were in for two weeks. There was no distinction. That's how these mass court settlements generally were structured. It's a sort of leveling thing. So the idea that they swept in a small number of other breast-related claims is not at all an anomaly. These things are off the market, is that true? I'm just wondering how long this case goes on. Oh, well, these are off the market. They've actually come back on the market with all kinds of other improvements in the products and warnings. They've warned people now that they're not going to last forever. In terms of Dr. Dunbar, he was focusing on the other products category, and 247 of the 250 were, in fact, not covered. So he was right. This was an insubstantial number of claims. Nobody really focused on it at confirmation because it was assumed they were being treated as they had been treated in the RSP. But I think maybe sometimes you need to sit down if you don't have anything more to say. So thank you. Thank you very much. First on the RSP, this has been a decision the courts make all the time. The first decision Judge Hooks said the RSP favored Dow Porning. She said it lengthened credibility to us. Now she's saying that it doesn't. She did a complete 180. That's not something that a trial court does all the time. No, we didn't want a 180. We had multiple grounds for winning, and she agreed with us on a subsidiary argument, but she ruled against us on a primary argument. So once you knocked out the primary argument saying she was wrong about the language, she should have just gone back to her subsidiary point and said, you know what, now that I'm on the RSP, Dow Porning wins. That's what should have happened here if she was going to go off on the RSP. I mean, we didn't focus on the RSP. We think Section 403, she's misinterpreted. The RSP has nothing to do with it. That was our primary argument. Our only point was if you're going to look at the RSP, we should win under that, too. As far as deference, the point on that, I don't think the court ruled that she gets deference to interpret the RSP or the orders of a judge in Northern District of Alabama, which is what her decision was based on here. There shouldn't be any deference for that. And even on interpreting Section 4.03, she didn't rely on any extrinsic evidence. She just looked at the plain language again, even though the court had already said it was unambiguous. So... So what deference did the prior penalty of her get? The deference on the extrinsic evidence findings. On the assessment of the extrinsic evidence. Assessment of an ambiguous contract provision considering the extrinsic evidence. But here, all those findings, as I went through, they were really in our favor. She said, and I know tissue expanders and not breast implants, at least that's marginally helpful to us. But then she went on and said, you know what, the party submitted this estimation where they said tissue expanders are not eligible for settlement confirmation. So if there's deference on her findings, they're in our favor. You know, once you get to the extrinsic evidence. The deference that the prior panel gave is unusual. Maybe unprecedented. But it is the law of the case, is it not? Well, it's the law of the case, but the question is whether it applies given the specific rationale for her ruling. You know, the court has articulated several standards governing the Dow Horning case. You know, there have been some rulings where it's de novo, some rulings where it's abuse discretion, and some rulings where it's this intermediate standard of review. And it really depends on what is the district court doing? What is their decision based on? Here it was based on the RSP. And there shouldn't be any deference to a judge interpreting some decision of some other judge. She doesn't have any special expertise on that. And then the final point, you know, just to put this in context, there wasn't any evidentiary hearing here. No claimant came in and said, I really understood it was the RSP. We submitted our affidavit. Didn't your party ask for a hearing? Well, what happened was we got on the phone with the judge, and she essentially decreed that here's what we're going to do. And so the party is kind of affidavit-esque to that. Did anyone say there's not a hearing? Well, I wasn't on the phone call. I don't think people stood up. But I just, sorry to tell you, it's hard to stand up to a district judge when they're saying that. It's easy. There's no objection to the lack of a hearing, right? No, there was not, because, I mean... Believe it or not, to preserve the issue, you do have to stand up. That's a fair point. If you don't, you've waived the issue. Well, in my litany of things, there's no evidentiary hearing. You don't seem like the kind of guy that would hesitate. Huh? You don't seem like the kind of guy that would hesitate if he thought there's something that should be said. Well, you know what? I wasn't on the phone. If it was me, I might have piped up. It was one of my colleagues. But, I mean, we were the only ones that submitted an affidavit, right? We submitted our side of the story. No claimant came in with an affidavit. And then on this anomaly, the reason there's an anomaly is because nobody thought downpouring tissue expanders were breast implants. They weren't treated that way in the RSP, and they weren't treated that way in the downpouring plan. And that's why you don't have these multiple manufacturer reductions. But he was just saying that even if you wouldn't, that would be an anomaly. Isn't he right about that? I'm not sure that he is right about that. Because it doesn't seem like much of an argument that there's an anomaly. Oh, well, you know what? There might still be an anomaly, but where it comes up is in the RSP. Because the RSP didn't think that downpouring tissue expanders were breast implants. I don't think they thought about this. So they didn't... They didn't think about what you made earlier. No one was thinking about it. No. Everybody was thinking that tissue expanders were not breast implants. So they didn't give you the reduction, right? Nobody gave you the reduction for a tissue expander because they didn't think it was a breast implant. Okay. Thank you, Your Honors. Thank you, both of you, for your excellent briefs and oral arguments. We appreciate it. And we're going to get to watch the soccer game. Why not? All right. Thank you. It's to be submitted in a group called...